OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Tenth Judicial District (hereinafter the Grievance Committee) served the respondent with a petition containing eight charges of professional misconduct. After a pretrial conference and a hearing, the Special Referee sustained charges one through four but did not sustain charges five through eight. The Grievance Committee now moves to confirm the Special Referee’s report to the extent of those charges which were sustained, to disaffirm with respect to those charges which were not sustained, and to impose such discipline as the Court deems just and proper. The respondent moves to confirm the report to the extent of the charges which were not sustained, to disaffirm with respect to the charges sustained, and to dismiss the petition.
Charge one alleges that the respondent failed to preserve funds entrusted to him and converted those funds to a use other than that for which they were intended, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
On or about December 26, 1991, the respondent’s law firm was retained to commence a wrongful death action on behalf of Judith Zwiebach and her children in connection with the death of her husband, Marvin. In or about January 1992, the wrongful death action against Hachiro Nakamura, M.D. and Hofstra Health Dome was commenced in the Supreme Court, Queens County.
*147 In or about October 1994, the respondent’s firm referred the matter to another firm as trial counsel. On November 18, 1999, the Nassau County Surrogate issued a decree granting the parties to the wrongful death action leave to compromise and settle the case for the sum of $2,010,000. Out of those proceeds, Judith Zwiebach and her three children were to receive $398,627.86 each after payment of legal fees and disbursements.
Between December 24, 1999, and May 23, 2000, the respondent’s firm maintained an escrow account at Chase Bank denominated “Seavey Vogel & Oziel Attorney Escrow Account.” On or about January 21, 2000, the respondent received and deposited into that account settlement funds from Dr. Nakamura’s liability insurance carrier in the form of four separate checks payable directly to Judith Zwiebach and her children individually, each in the amount of $368,166.67, for a total of $1,472,666.68. Prior to the disbursement of any funds to the Zwiebachs, the balance in the respondent’s escrow account fell below the $1,472,666.68 entrusted to him.
On or about February 23, 2000, the respondent received and deposited into the escrow account settlement funds from Hofstra Health Dome’s liability carrier, in the form of four separate checks payable directly to the four Zwiebachs in the amount of $30,461.20 each, for a total of $121,844.80. Prior to the disbursement of any of the settlement funds, the balance in the escrow account fell below that amount entrusted to the respondent.
Charge two alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), based on the factual specifications set forth in charge one.
Charge three alleges that the respondent failed to promptly deliver to his clients, at their request, funds in his possession which the clients were entitled to receive, in violation of Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]).
Between January and April 2000, the respondent failed to deliver any of the settlement funds entrusted to him despite numerous requests by Judith Zwiebach. On or about April 13, 2000, the respondent released the sum of $1,060,000 in four equal checks of $265,000, payable to Judith Zwiebach and her three children individually. The respondent claimed that the balance of settlement funds needed to be held for payment of potential New York State estate tax. He informed Judith *148 Zwiebach that he would release the balance after the expiration of the three-year statute of limitations. In or about November 2003, Judith Zwiebach requested the release of those funds. The respondent informed her that he did not know if he could release them despite the passage of three years. He thereafter failed to return Judith Zwiebach’s calls.
In or about December 2003, Judith Zwiebach retained another attorney to investigate the issue of potential estate tax liability. In or about February 2004, the respondent informed her that a gift tax might be due with respect to the children’s funds inasmuch as the wrongful death action had been brought in her name only. In or about June 2004, her new attorney advised Judith Zwiebach that no gift or estate taxes were due and demanded the respondent’s release of the balance of settlement funds.
On August 5, 2004, the respondent released the sum of $260,000 in the form of four separate checks of $65,000 each, payable to Judith Zwiebach and each of her three children. The respondent did not release the remaining sum owed of $274,511.67 despite repeated demands.
Charge four alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), based on the factual specifications of charge three.
Charge five alleges that the respondent engaged in conduct involving dishonesty, fraud, and deceit by providing his client, Judith Zwiebach, with false and misleading information as to the status of her legal matter, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).
In or about April 1994, the respondent was retained to represent Judith Zwiebach in a matter entitled Bisso v Zwiebach. In late 1999, he informed his client that the matter had been settled and provided her with a purported stipulation of settlement which acknowledged settlement of all claims for $75,000. It bore the respondent’s signature and the alleged signature of counsel for the plaintiff. The civil action had not been settled and the plaintiffs counsel never signed any stipulation in the matter.
Charge six alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of *149 Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), based on the factual specifications of charge five.
Charge seven alleges that the respondent failed to preserve funds entrusted to him and misappropriated those funds to a use other than that for which they were intended, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
In or about February 1999, the respondent was retained by Judith Zwiebach, as trustee of the Judith Zwiebach Revocable Living Trust, to represent her in the sale of her home, which was the trust property. At the closing on June 24, 1999, the respondent was entrusted with the sum of $75,000 from the sale proceeds which was to have been placed in the escrow account pending settlement of the Bisso v Zwiebach action.
The respondent thereafter informed Judith Zwiebach that the action was settled and that the $75,000 he was holding in escrow had been forwarded to plaintiffs counsel in settlement of the action. The respondent never remitted the $75,000 to either counsel for the plaintiff or Judith Zwiebach.
Charge eight alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), based on the factual specifications of charge seven.
Based on the evidence adduced and the reasonable inferences to be drawn therefrom, the Grievance Committee’s motion to confirm in part and disaffirm in part the Special Referee’s report is granted, and all eight charges of the petition are sustained. The respondent’s motion to confirm the Special Referee’s report with respect to the charges which were not sustained, to disaffirm with respect to the charges which were sustained, and to dismiss the petition is denied in its entirety.
In determining an appropriate measure of discipline to impose, the Grievance Committee notes that the respondent has no prior disciplinary history. The respondent admitted at the hearing that he had been the subject of prior complaints which were dismissed or discontinued. Notwithstanding the respondent’s arguments in defense of his conduct, it has been held that the ultimate responsibility for affixing reasonable legal fees rests with the Surrogate irrespective of the existence of a retainer agreement (see Matter of Piterniak, 38 AD3d 780, 781 [2007]). In implementing his own assessments of the *150 reasonable value of his services for that of the Surrogate, the respondent acted improperly. His argument that the stipulations signed by the Zwiebachs constitute a novation in place of their old obligation, is unavailing. There is also in place an order finding that the respondent submitted a forged settlement agreement to his client and wrongfully withheld $75,000 from her for an extended period of time. Having failed to timely perfect an appeal from that order, the respondent is bound thereby.
This matter is complicated by the long-standing friendship between the Zwiebach and Oziel families. From December 1986 through the death of Dr. Zwiebach in 1991, the respondent’s firm represented him in numerous matters involving the company created to run the X-ray business which Dr. Zwiebach had purchased. The firm’s representation included matters related to the continual late payment of notes due for the purchase of the X-ray business, which led to the default notices and threats to call in the entire balance of the note due, as well as failures to pay school taxes and to provide proper insurance coverage as required under the agreement. During this same period, the respondent also represented Judith Zwiebach in various business ventures, including the sale of Gladstones Jewelry Castings, Inc., a business she had operated.
During this period, the respondent’s firm received no fees from Dr. or Mrs. Zwiebach, in consideration of their financial difficulties. That situation was altered by Judith Zwiebach’s receipt of more than $1.5 million in insurance proceeds and the wrongful death settlement.
Under the totality of circumstances, we find that the respondent has evinced serious misjudgment which warrants his suspension from practice for a period of five years.
Prudenti, P.J., Mastro, Rivera, Spolzino and Dillon, JJ., concur.
Ordered that the Grievance Committee’s motion to confirm in part and disaffirm in part is granted and all eight charges of the petition are sustained; and it is further,
Ordered that the respondent’s motion to confirm the Special Referee’s report to the extent of those charges which were not sustained and to disaffirm the report to the extent of the charges which were sustained is denied in its entirety; and it is further,
Ordered that the respondent Robert I. Oziel, admitted as Robert Israel Oziel, is suspended from the practice of law for a *151 period of five years, commencing September 4, 2009, and continuing until further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of five years upon furnishing satisfactory proof that during the said period he (1) refrained from practicing or attempting to practice law; (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c); and (4) otherwise properly conducted himself and it is further,
Ordered that pursuant to Judiciary Law § 90, effective immediately, Robert I. Oziel, admitted as Robert Israel Oziel, is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Robert I. Oziel, admitted as Robert Israel Oziel, has been issued a secure pass by the Office of Court Administration, it shall be.returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).